

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. 0176-25

**ISRAEL GARCIA HERNANDEZ, Appellant**

**v.**

## THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE THIRTEENTH COURT OF APPEALS WILLACY COUNTY

**PARKER, J., filed a dissenting opinion in which YEARY, J., joined.**

<u>DISSENTING OPINION</u>

Although the court of appeals erred to consider events occurring after Officer Garcia activated his emergency lights, I would conclude that the information possessed by him before that time was sufficient to confer reasonable suspicion to stop. An officer found Appellant in an area in close proximity to the 911 caller's residence, in a vehicle that generally matched the caller's description, late at night on

a work day in a sparsely populated county. The area had "a lot" of incidences of human smuggling at the time of the stop, and the 911 caller's description of the scene could have reasonably indicated an imminent trespass. An experienced patrol sergeant could find that all these circumstances combined suggested criminality. Consequently, I would hold that the evidence was sufficient to show the "lawful" detention element of the offense of evading detention.

## I. Relevant Facts

Because the only contested issue in this case is whether Officer Garcia had reasonable suspicion to effectuate the stop, the only facts relevant to this inquiry are those up until Officer Garcia activated his emergency lights.

At 10:16 PM, on Tuesday March 17, 2020, Officer Garcia received a call from dispatch. A 911 caller reported a suspicious four-door Chevrolet Silverado driving at a slow rate in a rural area of Willacy County.[1] At the time of the call, Officer Garcia, a patrol sergeant of 12 years, was in Sebastian, Texas, about 10 to 12 miles from the 911 caller's residence. It took Officer Garcia about 30 minutes to reach the 911 caller's residence, and he did not see another vehicle for "maybe miles" before he arrived on

---

[1]State's Exhibit 1 shows an aerial photograph of the area, and there are no more than four residences near where Officer Garcia first saw Appellant.

scene. At 10:46 PM, Officer Garcia saw a four-door pickup truck,[2] though not a Chevrolet Silverado, near the caller's residence on a dirt road off the highway in front of the caller's house. The proximity of the dirt road to the caller's mailbox is evidenced by a sign directly in front of that road being visible from the caller's mailbox.[3] The rear side of the caller's home was visible from the dirt road where Officer Garcia activated his emergency lights. Officer Garcia also testified that, "at the time, we had a lot of incidences of human smuggling. In that area, human smugglers would go out there and pick up illegal aliens and transport them up North." Officer Garcia activated his emergency lights one minute after turning onto the dirt road.

## II. Applicable Law

### A. Standard of Review

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of

---

[2]Appellant's pickup truck can be seen briefly in Defense's Exhibit 1. It is a four-door, extended cab pickup truck with clamshell rear doors.

[3]State's Exhibit 7 shows a photograph taken from the front of the 911 caller's home, which is across the street from the caller's mailbox. The sign in front of the dirt road can be clearly seen from this location.

the crime beyond a reasonable doubt."[4] When "considering a claim of evidentiary insufficiency, a reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence."[5] Since Appellant was convicted of evading detention, "reasonable suspicion"—required for a lawful detention—was effectively an element of the crime. "[W]hen a lawful detention is an element of the crime, a failure of the State to prove beyond a reasonable doubt that the detention was lawful must result in an acquittal of the defendant."[6]

## B.    Reasonable Suspicion

An investigative detention must be justified by reasonable suspicion.[7] In order to have a reasonable suspicion, an officer "must have specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, had been, or soon will be engaged in criminal activity."[8] The articulable facts must show "that some activity out of the ordinary is

---

[4]*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014).

[5]*Edwards v. State*, 666 S.W.3d 571, 574 (Tex. Crim. App. 2023).

[6]*Day v. State*, 614 S.W.3d 121, 125 (Tex. Crim. App. 2020).

[7]*Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011).

[8]*Id.*

occurring or has occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the unusual activity is related to crime."[9] This is an objective standard in which we must disregard the actual subjective intent of the officer and, instead, look to whether there was an objectively justifiable basis for the detention.[10] To satisfy this standard, "the police officer must have some minimal level of objective justification for making the stop."[11] When determining whether an officer had reasonable suspicion, we must look to the totality of the circumstances. "[T]hose circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified."[12] When an officer or a witness has not witnessed a suspect actually do anything illegal, "[w]e recognize that there may be instances when a person's conduct viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to reasonable suspicion."[13]

Unlike probable cause, "it is not a *sine qua non* of reasonable suspicion that a

---

[9] *Meeks v. State*, 653 S.W.2d 6, 12 (Tex. Crim. App. 1983).

[10] *Id.*

[11] *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010).

[12] *Meeks*, 653 S.W.2d at 12.

[13] *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).

detaining officer be able to pinpoint a particular penal infraction."[14] Absolute certainty from the officer is not required.[15] "It is enough to satisfy the lesser standard of reasonable suspicion that the information is sufficiently detailed and reliable— i.e, it supports more than an inarticulate hunch or intuition—to suggest that *something* of an apparently criminal nature is brewing."[16] Due weight must also be given to the specific reasonable inferences that an officer is entitled to draw from the facts in light of his experience.[17]

### III. Analysis

At the time of the incident, Officer Garcia had been a patrol sergeant for 12 years with the Willacy County Sheriff's Office, overseeing the patrol division. The facts known to Officer Garcia at the time were as follows: (1) it was a Tuesday night in a sparsely populated rural area; (2) a 911 call came in at 10:16 PM describing a suspicious four-door Chevrolet Silverado; (3) in his 30 minute drive on the way to caller's residence, Officer Garcia did not see any other vehicles for maybe miles; (4) Officer Garcia saw one vehicle on a dirt road at 10:46 PM, which was a four-door

---

[14] *Derichsweiler*, 348 S.W.3d at 916.

[15] *Bobo v. State*, 843 S.W.2d 572 (Tex. Crim. App. 1992).

[16] *Derichsweiler*, 348 S.W.3d at 917.

[17] *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

pickup; and (5) this vehicle was close in proximity to the caller's residence.

The two issues that cut against a finding of reasonable suspicion are the 30 minutes it took for Officer Garcia to receive the call and arrive on scene and the fact that Appellant's pickup truck was not a Chevrolet Silverado as specifically described by the caller. Reasonable suspicion is not a high bar, but only requires more than "an inarticulate hunch or intuition" to suggest "*something* of an apparently criminal nature is brewing."[18]

### A. 30-Minute Delay

30 minutes is a long time for a suspicious vehicle to leave an area. However, a lone four-door pickup truck, very close to where the 911 call originated from, objectively suggests that Appellant's pickup truck was the same truck that the caller spoke of. Officer Garcia also explained that he did not see any other vehicles on the road for "maybe miles." It would be a reasonable inference that because Officer Garcia did not see any other vehicles driving away from the scene, that this would increase the likelihood that Appellant's truck *was* the suspicious vehicle the 911 caller spoke of. The suspicion is amplified by the fact that it was 10:46 PM at the time Officer Garcia found Appellant, and it was in a sparsely populated rural area of

---

[18]*Derichsweiler*, 348 S.W.3d at 917.

Willacy County, a small county,[19] on a Tuesday night. Vehicles out late at night on a weekend might not be suspicious, but one lone vehicle out late on a work night could contribute to finding of reasonable suspicion. Lastly, Appellant was on a dirt road, off of the county road, which indicates that he was not simply passing through the area.

## B. Specific Description of the Suspicious Vehicle

Appellant and the majority opinion focus on the specific description of the suspicious four-door "Chevrolet Silverado." When looking at the facts in the light most favorable to the verdict and reasonable inferences therefrom,[20] it is reasonable to think that a 911 caller looking out on a road from her house in such a rural area at 10:16 PM would identify the vehicle as a Chevrolet Silverado solely by its shape, and may be mistaken about the make and model. It was late at night in an extremely dark rural area.[21] Likewise it is reasonable for Officer Garcia to not look for the exact make and model of the vehicle at this time of night but instead look for a shape that resembles a four-door pickup truck. Officer Garcia simply sought to make an

---

[19]In 2019, Willacy County had a population of 21,358. PEPANNRES: Annual Estimates of the Resident Population, American Community Survey 10-year Estimates, U.S. Census Bureau (2019), https://www.census.gov/search-results.html?searchType=web&cssp =SERP&q=Willacy%20County,%20Texas (last visited 11/17/2025).

[20]*Jackson*, 443 U.S. at 318-19; *Whatley*, 445 S.W.3d at 166.

[21]State's Exhibit 9, Officer Garcia's bodycam footage, shows that it was extremely dark outside. The 911 caller was not in a position to know for sure what the make and model of the pickup truck was.

investigative detention. "A brief investigative detention constitutes a significantly lesser intrusion upon the privacy and integrity of the person than a full-blown custodial arrest."[22] This is why an investigative detention merely requires reasonable suspicion, more than an inarticulate hunch,[23] rather than probable cause. Officer Garcia did pull over a four-door pickup truck, though not the exact make and model that was reported. Even though Officer Garcia did not find exactly what the caller suggested he would find, he did not take a shot in the dark nor was he acting on a mere hunch. He went exactly where the caller told him a suspicious truck drove slowly by her house and found a truck very close by after driving miles, not seeing any other vehicles on the road.[24]

## C.    Officer Garcia's Personal Knowledge

---

[22]*Derichsweiler*, 348 S.W.3d at 916.

[23]*Id.*

[24]While I agree with Judge McClure that this is an unusual case, he misstates several of the facts. Judge McClure says that the 911 caller was anonymous, that the 911 caller only saw the suspicious vehicle driving slowly on the dirt road, and that Appellant drove a 2-door pickup truck. The record reflects that the identity of the 911 caller was known to the police, the 911 caller told dispatch that she saw the suspicious vehicle driving slowly on the paved highway directly in front of her house, and that Appellant's vehicle was a 4-door pickup truck.

Also, Judge McClure suggests that Officer Garcia or the 911 caller must see criminal activity before conferring reasonable suspicion. However, reasonable suspicion is present if the police had specific, articulable facts that cause an officer to reasonably conclude that the detainee "is, had been, or soon will be engaged in criminal activity." *Derichsweiler*, 348 S.W.3d at 914.

The majority is understandably skeptical of Officer Garcia's reliance on his personal knowledge of human trafficking in the area. However, a reasonable suspicion inquiry must look to the totality of the circumstances. One of those circumstances, which was important to the United States Supreme Court in *Terry*, is the experience of the officer.[25] Here, Officer Garcia had held a position of authority with the Willacy County Sheriff's Office for 12 years, and he explained "*at the time*, we had a lot of incidences of human smuggling. *In that area*, human smugglers would go out there and pick up illegal aliens and transport them up North." This is not an instance where any officer could pull anyone over because they happened to be in an area known to have some human trafficking activity. There was a 911 call, one vehicle in the area very close to the caller's residence, late at night, and a high-ranking experienced officer who knew of an issue peculiar to this area at this time. It was peculiar to this area that human smugglers would pick illegal aliens up and then transport them North. Objectively, this situation could have suggested a "pickup." It would be reasonable for Officer Garcia to suspect that a smuggler was picking illegal aliens up at a rural home to transport them North.

### D. Objective Basis for the Stop

---

[25] *See Terry*, 392 U.S. at 23 (discussing that an officer with as much experience as the officer who effectuated the stop, would have done a poor job if he did not stop Terry).

Another explanation could be a possible trespass. Though this was never brought up, this is an objective inquiry.[26] The 911 caller explained on the call that the suspicious pickup truck was driving slowly, late at night, which is behavior that a reasonable officer could reasonably suspect to be the "casing" of the caller's home. This would make Appellant's appearance on the dirt road more suspicious to Officer Garcia. The dirt road was connected to the 911 caller's and her neighbors' backyards by an empty field. Because this is an objective inquiry, we must not be swayed by Officer Garcia's subjective intent.[27] If the dirt road was private property, this could have been a trespass in progress. It also could have been suggestive of an imminent trespass because all the driver would have had to do is exit the truck and go across the field into the residents' backyards. In isolation, Appellant's behavior was not criminal, but when viewed with the totality of the circumstances, a reasonable officer could have reasonably suspected that he had committed, was committing, or was about to commit a crime.[28]

---

[26]While the Court takes issue with the fact that Officer Garcia never testified that he considered this theory, I reiterate that the reasonable suspicion analysis is meant to determine "whether there was an *objectively* justifiable basis for the detention." *Derichsweiler*, 348 S.W.3d at 914 (emphasis added). Officer Garcia's subjective intent is irrelevant; a stop is valid if supported by an objective basis—such as a trespass.

[27]*See Meeks*, 653 S.W.2d at 12.

[28]*See Derichsweiler*, 348 S.W.3d at 916.

## IV. Conclusion

Under the totality of the circumstances, Officer Garcia had reasonable suspicion that criminal activity may be afoot.[29] Officer Garcia was an experienced officer who received a call late at night. He did not see any other vehicles on the road for miles until he saw Appellant on a dirt road very close to the caller's home. Appellant's vehicle matched the *general* description of a four-door pickup truck in an area that had "a lot of" incidences of human smuggling in that area "at that time." The totality of the circumstances also could have objectively indicated an imminent trespass. Officer Garcia stopped Appellant after receiving a 911 call, at a time of night, on a day of the week, where less people would be driving around, in an area with very few residences. The jury could rationally find that the detention was lawful based on reasonable suspicion.

Because Officer Garcia was acting on more than a hunch when he effectuated Appellant's detention, and because a rational juror could find beyond a reasonable doubt that Officer Garcia had reasonable suspicion to detain Appellant, I must respectfully dissent.

Filed: December 19, 2025
Publish

---

[29] *See id.*